## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEFAN COOPER, | : |
| | : |
| *Plaintiff,* | : |
| | : |
| v. | : **Case No.:24-798** |
| | : |
| UNIVERSAL STAINLESS AND ALLOY | : |
| PRODUCTS, INC. | : |
| | : |
| *Defendant.* | : |

### COMPLAINT IN CIVIL ACTION

AND NOW, comes Plaintiff, Stefan Cooper, by and through the undersigned counsel, J.P. Ward & Associates, LLC, and, specifically, Joshua P. Ward, Esquire, who files the within Complaint in Civil Action against Defendant, Universal Stainless and Alloy Products, Inc., of which the following is a statement:

### PARTIES

1.      Plaintiff, Stefan Cooper (hereinafter "Mr. Cooper"), is an adult individual who currently resides at 235 Sterling St., Pittsburgh, PA, 15210.

2.      Defendant, Universal Stainless and Alloy Products, Inc. (hereinafter "Universal" or "Defendant"), is a Delaware corporation with a principal place of business located at 600 Mayer Street, Bridgeville, PA 15017.

### JURISDICTION AND VENUE

3.      This action arises under Section 1981 of the Civil Rights Act of 1866 ("Section 1981"), 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§ 951-963.

4.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

5.      Plaintiff is a resident and citizen of Pennsylvania, a substantial part of the events or omissions giving rise to the claims occurred in Western Pennsylvania, and, therefore, this action is within the jurisdiction of the United States District Court for the Western District of Pennsylvania and the venue is proper pursuant to 25 U.S.C. § 1391(b).

6.      On December 24, 2023, Plaintiff dual-filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC").

7.      On January 4, 2024, the PHRC issued a Notice of Right to Sue.

8.      Plaintiff has exhausted all his administrative remedies under Title VII and the PHRA.

**FACTUAL ALLEGATIONS**

9.      In September 2022, Mr. Cooper commenced his employment with Universal in the position of Millwright/Welder.

10.      Universal's Bridgeville plant produces specialty steel products in the form of finished flat bar, long products and flat rolled products including certain grades of electro-slag remelted steels and vacuum-arc remelted steels.

11.      At all times relevant, Mr. Cooper is an African American individual who was qualified to perform the essential functions of his job duties.

12.      Mr. Cooper was one of three African American employees that were disciplined and/or wrongfully terminated within weeks of one another by the same group of managers in the

2

Bloomer Department. J.P. Ward & Associates, LLC represents Erwin Ward, Stefan Cooper, and Anthony Upshaw.

13. Upon information and belief, Universal has a pattern and practice of disparate treatment toward its African American employees, at a minimum, within the management of the Bloomer Department.

14. Universal employs a disproportionately small number of African American employees and further, subjects its African American employees to heightened scrutiny which results in a high turnover rate.

15. Universal allowed its managers, white employees, and supervisors to discriminate against its African American employees.

16. Mr. Cooper was a victim of Universal's openly bigoted practices, perpetrated by certain personnel within management, as set forth herein.

17. Throughout Mr. Cooper's employment, Universal's supervisors subjected him to hyper scrutiny which similarly situated Caucasian employees were not subjected to.

18. During Mr. Cooper's first months at work, a supervisor named Gary Hagen (hereinafter "Mr. Hagen") harassed Mr. Cooper by following him around for the entirety of the workday and antagonizing him.

19. Mr. Hagen regularly interrupted Mr. Cooper's breaks by requiring him to return to work while at the same time allowing Mr. Cooper's Caucasian counterparts to remain in the break room.

20. On October 11, 2022, Mr. Cooper and two other Caucasian employees decided to take their lunch break; however, when they began to walk away together, Mr. Hagen grabbed Mr. Cooper by the arm and told him that he needed to speak to him.

3

21.     Mr. Cooper did not welcome the touching by Mr. Hagen and filed a grievance with his union representative and claimed that Mr. Hagen's treatment of him was discriminatory.

22.     Additionally, Mr. Cooper's direct supervisor, Jake Barry (hereinafter "Mr. Barry"), regularly gave more favorable schedules to similarly situated Caucasian employees and was less likely to grant the leave requests of Mr. Cooper and the other African American employees.

23.     Upon information and belief, Mr. Barry purposefully gave Caucasian employees more favorable schedules.

24.     On December 21, 2022, Mr. Cooper made a complaint to his union representative, his union's grievance officer, and Universal's HR Department regarding Mr. Barry's discriminatory scheduling practices.

25.     Immediately following Mr. Cooper's complaint, Mr. Barry retaliated against him by giving him an even more disfavored schedule.

26.     On December 22, 2022, Mr. Cooper was written up for previously using his cell phone at work, which had never occurred.

27.     Upon information and belief, Universal fabricated Mr. Cooper's write-up in retaliation for his report of discrimination.

28.     On December 24, 2022, Mr. Cooper dual-filed a Charge of Discrimination with the EEOC and PHRC.

29.     Subsequently, Universal denied Mr. Cooper's request to take his "Ramsay exam," an aptitude test that would allow for Mr. Cooper to seek promotion within Universal.

30.     Universal claimed that Mr. Cooper was not eligible to take the test because he had not yet passed the mandatory six-month probationary period in their employment.

31.     However, Universal had allowed four similarly situated Caucasian employees to take the Ramsay exam despite the fact that all four employees were still in the six-month probationary period.

32.     Upon information and belief, Universal's reasoning for the denial was pretextual as it regularly allowed Caucasian employees to take the Ramsay test prior to the completion of their probation.

33.     Upon information and belief, Universal's denial of Mr. Cooper's request was in retaliation for filing a Charge of Discrimination with the EEOC and PHRC.

34.     Upon information and belief, Universal discriminated against Mr. Cooper based on his race, and retaliated against Mr. Cooper for his complaints of racial discrimination as a means of silencing him and others within the Bloomer Department.

## COUNT I
## RACIAL DISCRIMINATION IN VIOLATION OF SECTION 1981

35.     Mr. Cooper incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

36.     42 U.S.C. § 1981(a) provides that:

> All persons within the jurisdiction of the United States shall have the same right … to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws …as is enjoyed by white citizens.

*Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 460 (1975) (holding that Section 1981 "affords a federal remedy against discrimination in private employment on the basis of race."); *see also*, *Comcast Corp. v. Natl. Assn. of African Am.-Owned Media*, 140 S. Ct. 1009, 1010 (2020).

37.     Thus, Section 1981 prohibits employers from engaging in intentional racial discrimination.

5

38.     Defendant perpetuated the racial discrimination of Mr. Cooper in the workplace as delineated hereinabove.

39.     Mr. Cooper was subjected to hyper scrutiny and was disparately treated by his supervisors based on his race.

40.     Defendant was made aware of Mr. Cooper's harassment and disparate treatment based on his race, yet his reports fell on deaf ears and Universal failed to take any corrective action.

41.     Immediately following his reports of racial discrimination, Universal took adverse employment action by giving him a less favored schedule, taking disciplinary action against him, and denying him the ability to take a test that would allow for his promotion.

42.     Defendant's actions against Mr. Cooper were undertaken with reckless indifference to his federally protected right to make and enforce contracts irrespective of his race.

43.     As a direct and proximate result of the aforementioned conduct, Mr. Cooper suffered actual damages, including, but not limited to, lost wages, benefits, emotional distress, anxiety, loss of reputation, loss of professional opportunities, humiliation and severe inconvenience all in the past present and future.

44.     As set forth hereinabove, Defendant's actions were intentional, knowing, wanton, willful and so outrageous as to shock the conscience.

WHEREFORE, Plaintiff, Stefan Cooper, hereby requests this Honorable Court consider the above and grant relief in his favor and against Defendant, including an award of front pay, back pay, compensatory and punitive damages, costs and reasonable attorney's fees.

## COUNT II
### RETALIATION IN VIOLATION OF SECTION 1981

45.     Mr. Cooper incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

6

46.      The Third Circuit has held that retaliation claims under Section 1981 are controlled by the three-step burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*. 411 U.S. 792 (1973); *see also Canada v. Samuel Grossi & Sons*, 49 F.4th 340 (3d Cir. 2022) (citing *CBOCS West, Inc. v. Humphries*, 553 U.S. 442 (2008) (holding that § 1981 "encompasses claims of retaliation")).

47.      Under the first step of that framework, a plaintiff "must establish a prima facie case by showing '(1) [that he engaged in] protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Daniels v. Sch. Dist. Of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (alteration in original) (quoting *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007)).

48.      Upon making these showings, the employer then, under step two, has the burden of producing evidence that "present[s] a legitimate, non-retaliatory reason for having taken the adverse action." *Daniels*, 776 F.3d at 193. If the employer meets this burden, the burden then shifts "back to the plaintiff to demonstrate that 'the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action.'" *Id.* (quoting *Moore*, 461 F.3d at 342).

49.      Mr. Cooper engaged in protected activity by reporting racial discrimination and filing a Charge of Discrimination against Defendant.

50.      Immediately following his reports of racial discrimination, Universal took adverse employment action by giving him a less favored schedule, taking disciplinary action against him, and denying him the ability to take a test that would allow for his promotion.

51. There was a causal connection between Mr. Cooper's protected activity and Defendant's adverse employment action.

52. As set forth hereinabove, Defendant's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

53. As a direct and proximate cause of the aforementioned conduct, Mr. Cooper suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present and future.

WHEREFORE, Plaintiff, Stefan Cooper, hereby requests this Honorable Court consider the above and grant relief in his favor and against Defendant, including an award of front pay, back pay, compensatory and punitive damages, costs and reasonable attorney's fees.

**COUNT III**
**RACIAL DISCRIMINATION IN VIOLATION**
**OF TITLE VII AND THE PHRA**

54. Mr. Cooper incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

55. Under Title VII, it is illegal for an employer to "fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.A. §2000e-2(a)(1).

56. When analyzing a claim of discrimination under Title VII, a plaintiff must show: "(1) he is a member of a protected class; (2) he was qualified for the position he sought to attain or retain; (3) he suffered an adverse employment action; and (4) either similarly-situated non-members of the protected class were treated more favorably or the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Langley v. Merck*

*& Co.*, 186 Fed Appx. 258 (3d Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 36 L. E.D. 29 668 (1973)); *see also, Makky v. Chertoff*, 542 F.3d 205, 214 (3d Cir. 2008).

57.     The same legal standards apply to Title VII and PHRA claims. *Connelly v. LaneConstr. Corp.*, 809 F.3d 780, 791 (3d Cir. 2016) (citing *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 317 (3d Cir. 2000)). Further, the same standards apply to claims under Title VII and the PHRA on a summary judgment motion. *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999). Accordingly, the Court's analysis of the Title VII claims also applies to the PHRA claims. *Phillips v. Septa*, CIVIL ACTION NO. 16-0986, 6-7 (E.D. Pa. Feb. 12, 2018).

58.     Pennsylvania courts have determined that an adverse employment action is "an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Jones v. SEPTA*, 796 F.3d 323, 326 (3d Cir. 2015) (quoting *Storey v. Burns Int'l Sec. Serv.*, 390 F.3d 760, 764 (3d Cir. 2004)).

59.     Under Title VII, for other employees to be considered "similarly situated," they must have "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Morales v. Pnc Bank, N.A.*, 2012 U.S. Dist. LEXIS 143605 *23 (E.D. Pa. 2012).

60.     Pennsylvania courts have held that comparison factors for "similarly situated employees" have included "dealing with the same supervisor, having been subject to the same standards, and engaging in the same conduct without differentiating and mitigating circumstances." *Id.*

61.     Mr. Cooper is an African American individual and thus is a protected class under Title VII.

62.     Mr. Cooper was highly qualified for his position.

9

63. Defendant subjected Mr. Cooper to hyper scrutiny and disparate treatment, which similarly situated Caucasian employees were not subjected to.

64. Mr. Cooper made multiple reports of racial discrimination to Defendant.

65. Immediately following his reports of racial discrimination, Mr. Cooper suffered adverse employment actions when Defendant gave him a disfavored schedule, took disciplinary action against him, and denied him the ability to seek promotion within the company.

66. As set forth hereinabove, Defendant's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

67. As a direct and proximate cause of the aforementioned conduct, Mr. Cooper suffered actual damages, including, but not limited to, lost wages, benefits, emotional distress, anxiety, loss of reputation, loss of professional opportunities, humiliation and severe inconvenience, all in the past, present and future.

WHEREFORE, Plaintiff, Stefan Cooper, hereby requests that this Honorable Court enter judgment in his favor, and against Defendant, including compensatory damages, punitive damages, injunctive relief, costs and attorney fees, in addition to such other relief as deemed just and proper.

**COUNT IV**
**RETALIATION IN VIOLATION**
**OF TITLE VII AND THE PHRA**

68. Mr. Cooper incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

69. To establish a prima facie case of retaliation under Title VII, a plaintiff must provide evidence that: (1) he "engaged in activity protected by Title VII"; (2) the employer took an "adverse employment action" against him; and (3) there was a "causal connection" between his "participation in the protected activity and the adverse employment action." *Kengerski v.*

*Allegheny Cty.*, 435 F. Supp. 3d 671, 676 (W.D. Pa. 2020) (citing *Moore v. City of Philadelphia*, 461 F.3d 331, 341-42 (3d Cir. 2006)); *see also*, *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995)).

70.     The analytical framework used to evaluate a claim under the PHRA is effectively indistinguishable from that under Title VII. *See Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 409 (3d Cir. 1999).

71.     Pennsylvania courts have determined that an adverse employment action is "an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Jones v. SEPTA*, 796 F.3d 323, 326 (3d Cir. 2015) (quoting *Storey v. Burns Int'l Sec. Serv.*, 390 F.3d 760, 764 (3d Cir. 2004)).

72.     "When the temporal proximity between the protected activity and adverse action is unduly suggestive, this is sufficient standing alone to create an inference of causality…" *Lichtenstein v. University of Pittsburgh Medical Center*, 691 F.3d 294, 307 (3d Cir.2012) (citing *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3rd Cir.2007)).

73.     Mr. Cooper engaged in protected activity by reporting racial discrimination and filing a Charge of Discrimination with the EEOC and PHRC.

74.     Immediately following his reports of racial discrimination, Universal took adverse employment action by giving him a less favored schedule, taking disciplinary action against him, and denying him the ability to take a test that would allow for his promotion.

75.     The was a causal connection between Mr. Ward's protected activity and Defendant's adverse employment action.

76.     As set forth hereinabove, Defendant's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

77.     As a direct and proximate cause of the aforementioned conduct, Mr. Cooper suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present and future.

WHEREFORE, Plaintiff, Stefan Cooper, hereby requests that this Honorable Court enter judgment in his favor, and against Defendant, including compensatory damages, punitive damages, injunctive relief, costs and attorney fees, in addition to such other relief as deemed just and proper.

**JURY TRIAL DEMANDED.**

J.P. WARD & ASSOCIATES, LLC

Date: May 31, 2024                           By: _____

Joshua P. Ward (Pa. I.D. No. 320347)

J.P. Ward & Associates, LLC
The Rubicon Building
201 South Highland Avenue
Suite 201
Pittsburgh, PA 15206

*Counsel for Plaintiff*