IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STEFAN COOOPER,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:24cv798 |
| | ) | **Electronic Filing** |
| **UNIVERSAL STAINLESS AND** | ) | |
| **ALLOY PRODUCTS, INC.,** | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

Presently before the court is plaintiff's discovery motion to compel electronically stored information ("ESI") from defendant. ECF No. 22. For the reasons set forth below, plaintiff's motion will be denied.

Stefan Cooper ("plaintiff" or "Cooper") commenced this action against his former employer, Universal Stainless and Alloy Products, Inc. ("defendant" or "Universal Stainless"), seeking redress for alleged disparate treatment discrimination and retaliation on the basis of race, in violation of 42 U.S.C. § 1981(a), Title VII of the Civil Rights Act of 1964 ("Title VII"), and the Pennsylvania Human Relations Act ("PHRA"). See ECF No. 19 at 1–15. Cooper was employed by Universal Stainless between September of 2022 and February of 2024. Id. ¶¶ 12, 59.

In his first amended complaint, Cooper, an African American, alleges that his supervisors at Universal Stainless subjected him to hyper-scrutiny and disparate treatment compared to his white counterparts. Id. ¶¶ 21, 27, 36. He further asserts that on December 21, 2022, he made a complaint to his union representative, grievance officer, and defendant's human resources department regarding his supervisor's "discriminatory scheduling practices." Id. ¶ 28. Afterwards, Cooper was reportedly subjected to further discriminatory and retaliatory treatment by his supervisor. Id. ¶¶ 29–31. A few days later, he filed a charge of discrimination with the

EEOC and PHRC. Id. ¶ 32. Cooper alleges that more discriminatory and retaliatory treatment followed in an attempt to silence him. Id. ¶¶ 33–38.

As part of pretrial development, counsel for both parties conferred to, *inter alia*, develop a proposed discovery plan pursuant to Rule 26(f) of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 26(f)(2) (outlining the topics that the parties must cover during the Rule 26(f) conference); see also Fed. R. Civ. P. 26(f)(3) (specifying the issues that should be included in the parties' proposed discovery plan). On the same day, plaintiff's counsel served upon defense counsel a request for an "ESI search" pursuant to Rule 34(a). Relevant here, plaintiff's first request directed defendant to search and produce all documents containing various search terms for the period between September 1, 2022 and the "present date" (i.e., "the date that the ESI resource person begins the technologically assisted search"). See ECF No. 25 at 2. Nearly eighty search terms are contained in this request, including, *inter alia*, political figures, organizations, and movements; and hate groups; as well as derogatory epithets and slurs targeted at not just African Americans, but other minorities, nationalities, and religious groups outside of Cooper's protected class.

As reflected in the parties' Rule 26(f) report, plaintiff's ESI requests were a source of contention from the outset. In response to the question regarding the parties' "current need for dispute resolution," they wrote:

> The parties have discussed but have yet to resolve Defendant's objections to the scope and nature of Plaintiff's proposed ESI search terms – Defendant specifically objects (1) based on relevance to the inclusion of certain search terms that do not relate to Plaintiff's allegations in the Complaint and because the request is only for an ESI search and related production of the listed terms without any reference to any specific request for production of documents, interrogatory, or the claims in the Complaint (2) based on undue burden as to the remaining terms because the 57 undisputed search terms are not limited by coupling with Plaintiff's name or in any other manner. Plaintiff's counsel has indicated an intention to file a motion to compel in relation to certain search terms to which Defendant's counsel has objected.

2

ECF No. 9 ¶ 11(b)(8).

Moreover, in formulating an ESI discovery plan, the parties could not agree on a "meet and confer protocol" for "scope objections."  Id. at 10–11.  Plaintiff requested that defendant agree to a "standard three-step protocol" to address objections regarding the scope of ESI requests: (1) run plaintiff's "search terms as originally drafted;" (2) generate "a hit report before pulling data for review;" and (3) "confer with plaintiff's counsel to refine terms and minimize irrelevant or voluminous hits."  ECF No. 22 at 2.  And defendant seemingly agreed to this procedure only in instances when "there are objections/issues by either party based on undue burden," such as "voluminous false hits."  ECF No. 9 at 11.

Predictably, in response to plaintiff's ESI requests, defendant objected to the following search terms as irrelevant and lacking a basis in the pleadings:

> "black face", "muslim", "islam", "jim crow", "civil war", "spook", "mexic!", "beaner", "beener", "wet back", "south America", "immigrants", "illegal immigrants", "illegals", "jew!", "asian!", "gook", "slant", "slope", "towel heads", "camel", "terroris!", "uncle tom", "porch monkey", "black lives", "BLM", "B.L.M.", "NAACP", "KKK", "ku klux", "clan", "Obama", "protest!", "Biden", "Trump", "Kamala", "Harris"

ECF No. 25 at 3.  Shortly thereafter, plaintiff filed the present motion requesting that the court compel defendant to: (1) produce a hit report generated from the above terms, then meet and confer with plaintiff regarding potential measures to refine those results; (2) "produce the '5 up and 5 down' surrounding text messages and email chains for all communications identified as relevant during the ESI search;" (3) adhere to the "temporal scope or date range" of plaintiff's ESI requests; and (4) "identify all relevant sources and custodians for the requested ESI discovery."  See ECF No. 22-1.

In support of his motion, plaintiff argues that defendant's "decision to exclude" the disputed terms "obstructs [his] ability to fully explore its internal communications for evidence

3

of a racially hostile work environment and systemic discrimination." ECF No. 22 at 12. And with respect to the search terms that relate to groups outside of Cooper's protected class, plaintiff argues that "[e]vidence of derogatory terms targeting other races, religions, or political affiliations is highly relevant to proving a pattern and practice of discrimination and provides important context for Defendant's treatment of Plaintiff." <u>Id.</u> at 15. Plaintiff's position in support of compelling defendant to adhere to his "requested temporal scope" of ESI discovery is based on similar arguments of asserted relevance. <u>See id.</u> at 20–22. Lastly, plaintiff asserts that defendant has "consistently refused to identify a single source or custodian" of ESI discovery in violation of Local Rule 26.2.C. <u>Id.</u> at 6.

In response, defendant contends that the disputed search terms "have no basis in the pleadings, are irrelevant, and serve as an attempt to abuse the discovery process." <u>Id.</u> at 8. Moreover, defendant asserts that plaintiff "<u>never</u> requested or participated in any meet and confer" regarding a request for "information relating to custodians and sources of information or the time frame utilized for the ESI search." <u>Id.</u> at 4. And defendant further maintains that plaintiff "<u>never</u> requested surrounding '5 up and 5 down' texts or email messages or requested or participated in any meet and confer on this issue." <u>Id.</u> Accordingly, from defendant's perspective "the only issue even arguably rightfully before this Court is whether or not Defendant must search its ESI using search terms that have no relevance to Plaintiff's allegations and which are not rooted in the claims." <u>Id.</u> at 2.

Plaintiff's arguments are unavailing. In regards to the disputed search terms, he has failed to show that these keyword searches are relevant to his race-based employment discrimination claims. Therefore, his motion will be denied to the extent he seeks a hit report for these terms. And because plaintiff's motion is devoid of any indication that his other requests are properly before the court, the remainder of his motion will be denied without prejudice.

First, plaintiff's motion did not include "a certification that [counsel had] in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action," as required by Rule 37 of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 37(a)(1).  Nor did it include "a verbatim recitation of each . . . request, answer, response, and objection which is the subject of the motion or a copy of the actual discovery document which is the subject of the motion," as required by the district's Local Rules.  LCvR 37.2.  Courts have found such failures to be a sufficient basis to deny a motion to compel.  See, e.g., A.G. Cullen Constr., Inc. v. Travelers Cas. & Sur. Co. of Am., No. 07-765, 2009 WL 10689837, at *2 (W.D. Pa. Oct. 20, 2009) (denying motion to compel for failing to comply with Rule 37(a)(1)); Pletcher v. Giant Eagle Inc., No. CV 2:20-754, 2022 WL 3700912, at *5 (W.D. Pa. Aug. 26, 2022) ("Giant Eagle's Motions must be denied because the record before the Court demonstrates that it failed to meet and confer as to all of the discovery disputes raised in its motions and to submit corresponding certificates of conferral . . . ."); Coulter v. Paul Laurence Dunbar Cmty. Ctr., No. 16CV0125, 2020 WL 13469785, at *3 (W.D. Pa. May 13, 2020) ("Based upon these failures to comply with the applicable rules of civil procedure, the Court could deny Plaintiff's Motion to Compel Discovery.").

Here, plaintiff's failure to comply with the foregoing rules warrants denying the parts of his motion that seek to compel adherence to his requested timeframe, identification of ESI custodians and sources, and production of the "5 up and 5 down" messages.  Defendant claims that plaintiff never sought or participated in a conferral regarding these issues prior to filing the present motion.  See ECF No. 25 at 2.  And beyond that, it asserts that plaintiff never even included the "5 up and 5 down" requirement in his ESI requests for production.  See id. at 4.  Indeed, other than asking this court to compel defendant to produce the "5 up and 5 down" messages, his motion is devoid of any discussion regarding this issue.  Moreover, plaintiff admits

5

that defendant "has not expressly contested the temporal scope" of his ESI requests in his motion. ECF No. 22 at 20. To order a party to produce discovery that was never sought or to comply with the temporal scope of a request that has not been contested would be an "arbitrary, fanciful, or clearly unreasonable" decision—or, in other words, an abuse of discretion. Palmer v. Nassan, 454 F. App'x 123, 125 (3d Cir. 2011). The court declines plaintiff's invitation to commit such errors.

Furthermore, despite plaintiff's claim that defendant has "consistently refused" to identify prospective sources or custodians of potentially relevant ESI, he did acknowledge in the Rule 26(f) report that defense counsel "has and will comply" with this requirement "in response to a discovery request for such information." ECF No. 9 at 9. Without more insight into plaintiff's requests or defendant's responses thereto, the court "cannot further consider the adequacy" of defendant's responses "in the absence of a more specific articulation as to what those responses are and why they are inadequate." Paoli v. Stetser, No. CIV.A. 12-66-GMS-CJB, 2013 WL 2154393, at *8 (D. Del. May 16, 2013). Accordingly, plaintiff's motion to compel information concerning potential custodians and sources of ESI will be denied.

To the extent plaintiff's motion seeks relief related to the timeframe, custodians and sources, or the "5 up and 5 down" demand, his motion will be denied without prejudice to pursue appropriate follow-up discovery and conferral with opposing counsel.

Even though plaintiff's failure to attach a certificate pursuant to Rule 37(a)(1) infects his entire motion, the parties have provided enough information regarding the disputed search terms to permit the court to resolve this aspect of their disagreement. To the end, it should be noted that defendant has presented evidence that plaintiff's counsel did *not* actually engage in a meaningful meet and confer on this issue. See ECF No. 25 at 3 (describing defense counsel's unanswered requests to meet and confer). Nevertheless, it also recognizes that it is the only

6

matter that rationally could be deemed properly before the court. And because there is sufficient information to decide this issue and the court's resolution will not be in plaintiff's favor, the court will proceed in the interests of judicial economy.

In short, plaintiff has not met his burden to demonstrate that the requested discovery is "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule 37 governs motions to compel discovery. When deciding a motion to compel, "[t]he moving party bears the initial burden to prove that the requested discovery falls within the scope of discovery as defined by Rule 26(b)(1)."[1] Atkinson v. Luitpold Pharms., Inc., 414 F. Supp. 3d 742, 744 (E.D. Pa. 2019). "If the moving party meets this initial burden, the burden then shifts to the opposing party to demonstrate that the requested discovery (i) does not fall within the scope of discovery contemplated by Rule 26(b)(1), or (ii) is not sufficiently relevant to justify the burden of producing the information." Id.

"While generally liberal, permissible discovery is not without limitations," meaning it "should not serve as a fishing expedition." Upshaw v. Janssen Rsch. & Dev., LLC, No. CIV.A. 11-7574, 2014 WL 1244047, at *3 (E.D. Pa. Mar. 26, 2014). Likewise, "discovery requests are not relevant simply because there is a possibility that the information may be relevant to the general subject matter of the action." Cole's Wexford Hotel, Inc. v. Highmark Inc., 209 F. Supp. 3d 810, 812 (W.D. Pa. 2016). And in the context of Title VII cases, the scope of discovery must

---

[1] See Fed. R. Civ. P. 26(b)(1) ("[T]he scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.").

be "tailored to the issues involved in the particular case." Bell v. Lockheed Martin Corp., 270 F.R.D. 186, 191 (D.N.J. 2010).

As for plaintiff's claims, he alleges disparate treatment in violation of Title VII, Section 1981, and the PHRA.  "Claims of race-based employment discrimination" under these three statutes "are analyzed coextensively."  McKinney v. Supreme Mid-Atl. Corp., No. 1:17-CV-2024, 2018 WL 6182058, at *3 (M.D. Pa. Nov. 27, 2018).  To establish a *prima facie* case of disparate treatment discrimination, plaintiff must show that: (1) "he is a member of a protected class;" (2) he was qualified for his position; (3) "he suffered an adverse employment action;" and (4) "the action occurred under circumstances that could give rise to an inference of intentional discrimination."  Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008).  Once plaintiff establishes a *prima facie* case, "the burden shifts to defendant 'to articulate some legitimate, nondiscriminatory reason'" for the adverse employment action.  Jones v. Sch. Dist. of Philadelphia, 198 F.3d 403, 410 (3d Cir. 1999) (quoting McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)).  "Finally, should the defendant carry this burden, the plaintiff then must have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."  Id.

Plaintiff also alleges retaliation in violation of the foregoing statutes.  "To establish a *prima facie* case of retaliation in violation of Title VII, the PHRA . . . and § 1981," plaintiff must demonstrate that: (1) "he engaged in protected activity;" (2) defendant "took an adverse employment action against him during or after the protected activity;" and (3) "there was a causal link between the protected activity and the adverse employment action."  Tomaszewski v. City of Philadelphia, 460 F. Supp. 3d 577, 599 (E.D. Pa. 2020).

Plaintiff's argument that excluding the disputed search terms "risks suppressing evidence that could reveal racially charged communications and discriminatory practices within

Defendant's workplace," (ECF No. 22 at 13–14), "bears all the hallmarks of a fishing expedition." Plastipak Packaging, Inc. v. DePasquale, 363 F. App'x 188, 192 (3d Cir. 2010). Such broad and speculative assertions do not demonstrate the relevance of these communications to the parties' claims or defenses—let alone, establish that such material even exists. See Claude P. Bamberger Int'l, Inc. v. Rohm & Haas Co., No. CIV. 96-1041 (WGB), 1998 WL 684263, at *4 (D.N.J. Apr. 1, 1998) (denying motion to compel where movant "not only sought to engage in a fishing expedition," but also "drain the pond and collect the fish from the bottom . . . without knowing whether there were even any fish in the pond."). Plaintiff's complaint and the claims made therein "circumscribe the scope of discovery." McClendon v. Pearson, No. 2:10-CV-1339, 2011 WL 2014816, at *2 (W.D. Pa. May 23, 2011). And plaintiff's amended complaint fails to allege actual facts related to the use of "racially charged" language or remarks against him, his protected class, or any other protected class/members thereof.

 Although plaintiff's motion references a "hostile work environment," it is important to note that he did not bring a standalone hostile work environment claim in his amended complaint. Even if he did, plaintiff "cannot rely on a nebulous 'overarching culture' of harassment to piece together a hostile work environment claim with vague, isolated incidents involving other employees." Felder v. Dep't of Corr., No. CV 21-1556, 2022 WL 329205, at *12 (E.D. Pa. Feb. 3, 2022). To the extent he seeks discovery based on a generalized theory of relevance concerning a "broader culture of racial discrimination" in defendant's workplace, this position is too tenuous to establish adequately the relevancy of the information sought. See MacDermid Printing Sols., L.L.C. v. E.I. du Pont de Nemours & Co., No. CIVA07-4325(MLC), 2008 WL 323764, at *1 (D.N.J. Feb. 5, 2008) ("[T]he fact that the discovery sought might uncover evidence showing that a plaintiff has a legitimate claim does not justify the discovery request." (internal quotation marks and citation omitted)).

And with respect to plaintiff's contention that "[t]he real cost" of ESI discovery "lies in the review process, not in the initial search or production of a hit report," (ECF No. 22 at 7), the court agrees with Judge Hardy that it "seems backwards and inappropriate" to insist that defendant run a hit report "on all of his search terms before assessing whether each of those search terms are relevant." <u>Wilbert v. Pyramid Healthcare, Inc.</u>, No. CV 24-331, 2025 WL 873947, at *7 (W.D. Pa. Mar. 20, 2025). Thus, a hit report of the disputed search terms is not "proportional to the needs of the case" because its "likely benefit" is speculative and outweighed by the burden and expense of its production. Fed. R. Civ. P. 26(b)(1). Accordingly, plaintiff's motion to compel the production of a hit report for the disputed search terms will be denied.

Based on the foregoing, plaintiff's motion to compel the production of a hit report for the disputed search terms will be denied. Plaintiff's motion will be denied without prejudice in all other aspects to engage in appropriate follow-up discovery and consultation. An appropriate order will follow.

<u>Date: May 27, 2025</u>

<u>s/David Stewart Cercone</u>
David Stewart Cercone
Senior United States District Judge

cc:   Joshua P. Ward, Esquire
     Justin Michael Bahorich, Esquire
     Lisa Lynne Garrett, Esquire
     Samantha Leigh Cook, Esquire
     Lindsay M. Buchanan, Esquire

     (*Via CM/ECF Electronic Mail*)